UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN MARIE ROBERTS,

    *Plaintiff*,                          CASE NO. 09-CV-12593

*v.*                                        DISTRICT JUDGE PATRICK J. DUGGAN
                                               MAGISTRATE JUDGE CHARLES E. BINDER
COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 14.)

Plaintiff was 60 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 66, 104.) Plaintiff's relevant employment includes work as a school secretary and para-professional for 10 years and as a sales assistant for new home construction for one year. (Tr. at 137.) Plaintiff filed the instant claims on May 14, 2007, alleging that she became unable to work on April 30, 2005. (Tr. at 104.) This onset date was amended to January 1, 2006. (Tr. at 66, 431.) The claim was denied at the initial administrative stages. (Tr. at 62.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders and connective tissue diseases (including Lupus) as possible bases of disability. (*Id.*) On December 2, 2008, Plaintiff appeared via videoconferencing before Administrative Law Judge ("ALJ") James M. Mitchell, who considered the application for benefits *de novo*. (Tr. at 63-77.) In a decision dated February 4, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 77.) Plaintiff requested a review of this decision on April 10, 2009. (Tr. at 102.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 2, 2009, when, after the review of additional exhibits[2] (Tr. at 5-19), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On July 1, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the

claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.  Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis; however, since neither the ALJ nor the Appeals Council reached any issues beyond Step One, the analysis is limited to the question whether Plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534.

**D.  ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 1, 2006, through her date last insured of June 30, 2006.[3] (Tr. at 68.) At step two, the ALJ found that Plaintiff had no severe impairment within the meaning of the second sequential step. (*Id.*) The ALJ nonetheless made the alternative finding that if Plaintiff were to have any severe impairments, they would be depression and pericardial effusion. (Tr. at 72.) Continuing with alternative findings, at step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff had the residual functional capacity to perform her past relevant work as a sales assistant and secretary. (Tr. at 77.) At step five of his alternative findings, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. (Tr. at 72-76.)

**E.     Administrative Record**

A review of the record evidence indicates that Plaintiff was treated at the Mayo Clinic. (Tr. at 239.) A CT scan of the thorax in April 2005 showed "[f]our tiny bilateral pulmonary nodules," "[n]o pulmonary embolus," and "minimal pericardial thickening vs. small pericardial effusion." (Tr. at 276.) An upper GI air contrast test performed in May 2005 was "negative." (Tr. at 249.) A CT scan of the abdomen-pancreas taken in May 2005 was also normal. (Tr. at 262.)

---

[3]In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(d)(1)(A). Federal courts have therefore held that "[m]edical evidence is relevant to prove a disability only while the claimant enjoyed insured status. However, medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Social Security,* 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975)); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); and *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976). Neither party takes issue with this conclusion.

An esopagogastroduodenoscopy performed in July 2005 showed a "small sliding hiatal hernia" but "otherwise was unremarkable." (Tr. at 250.) A colonoscopy performed at that time was normal and a CT of the abdomen and pelvis was negative. (Tr. at 250-52.) In addition, x-rays of the chest and GI-small bowel were also negative. (Tr. at 253.) J.F. Morrison, M.D., diagnosed Plaintiff with "[r]esolving small pericardial effusion, suggesting the possibility of recent episode of resolved pericarditis," "very mild pulmonary hypertension," "two small nodules in each lung," "Small hiatal hernia," and "[e]levated TPO antibodies . . . suggesting euthyroid Hashimoto's thyroiditis." (Tr. at 319.) None of these diagnoses required any treatment beyond "follow-up." (*Id.*)

Within two months of the expiration of Plaintiff's insured status, in April 2006, Dr. Morrison indicated that "we may not find any pathologic causes for her current symptoms" of chest discomfort, which he opined "may be a component of globus phenomena" despite the fact that Plaintiff "is quite adamant that there is underlying pathology." (Tr. at 264.) The same month, Mayo Clinic results showed Plaintiff's upper GI mobility study, CT angiogram and echocardiogram were all normal. (Tr. at 265.) It was noted that Plaintiff has a "tiny pericardial effusion at the apex," that she has bilateral breast implants, but that the remainder of the CT Angio Coronary was "negative." (Tr. at 272.) There were "no findings to suggest a cardiovascular dysfunction," "no findings to suggest ischemic heart disease," and "no finding of pericardial disease." (Tr. at 273.)

A month before the expiration of her insured status, in May 2006, Plaintiff was diagnosed by T.G. Osborn, M.D., of the Mayo Clinic, with chest pain, joint pains, "etiology unclear," undifferentiated connective tissue disease "possible," weight gain due to inactivity, dyspnea on exertion and a history of depression. (Tr. at 241.) For the chest pain, it was recommended to

7

"consider the use of a low-dose tricyclic antidepressant" and although Plaintiff "does have abnormal liver injury tests," "[e]tiology of this really is unclear." (Tr. at 247.) Also in May 2006, Dr. Morrison of Mayo Clinic diagnosed Plaintiff with "[p]ossible mild mediastinal inflammation" and "[m]ild increase in liver enzymes possibly related to [the medication] Cymbalta." (Tr. at 372.)

Eleven months after the expiration of her insured status, in May 2007, Dr. Osborn diagnosed Plaintiff with "[c]onnective tissue disease, inflammatory." (Tr. at 306, 369.) Dr. Osborn noted that Plaintiff "has generally been seronegative for connective tissue diseases but had clear-cut joint pains, mainly hand pain with swelling, fists, also foot pain. Continues with mild pains but had dramatic improvement on methotrexate. . . Doing very well. Minimal morning stiffness. No Joint swelling or pain of significance." (Tr. at 369.) At that same time, T. A. Laack, M.D., of Mayo Clinic, diagnosed Plaintiff with "[a]typical chest pain, unclear etiology," and "[e]pisode of light-headedness, resolved." (Tr. at 368.)

A Psychiatric Review Technique performed in July 2007 found insufficient evidence of affective disorders. (Tr. at 397.) The Assessor found the medically determinable impairment of depression present, but determined that it did not precisely satisfy the diagnostic criteria. (Tr. at 400.)

A Physical Residual Functional Capacity ("RFC") Assessment performed in July 2007 concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 412.) No postural, manipulative, visual, communicative, or environmental limitations were found. (Tr. at 413-15.) The Assessor found Plaintiff only "partially credible" because there was no medical evidence of swelling of the joints

or any description of lack of joint function to account for her claim of disabling joint pain. (Tr. at 416.) There was no treating source statement to compare to the Assessor's findings. Tr. at 417.)

In May 2008, Samer Salka, M.D., of Michigan Cardiology Associates, P.C., diagnosed Plaintiff with "[s]ystemic lupus erythematosus with chronic pericardial effusion and now with a small pericardial effusion." (Tr. at 420.)

In August 2008, Deanna Master, M.D., indicated that she was Plaintiff's primary physician since 2000 and that she "believe[s] [Plaintiff] is functionally both medically and physically disabled . . . [and s]he is unable to sustain meaningful employment." (Tr. at 430.)

In September 2008, Bryan Weinstein, D.O, provided a medical source statement wherein he opined that Plaintiff's mental impairment and symptoms would cause Plaintiff to be absent from work more than 3 times per month, create a "marked loss" in ability such that she could "sustain performance only up to 1/3 of an 8-hour workday," and that her ability to understand, remember and carry out instructions was affected. (Tr. at 434.) Specifically, Dr. Weinstein concluded that Plaintiff had a "moderate loss" in her ability to remember locations and work-like procedures; understand, remember, and carry out very short, simple instructions; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; travel in unfamiliar places; use public transportation; and set realistic goals or make plans independently of others. (Tr. at 435-36.) Dr. Weinstein also found that Plaintiff had a "marked loss" in her ability to maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; deal with stress of semi-skilled and skilled work; get along with coworkers and peers without unduly

9

distracting them or exhibiting behavioral extremes; respond appropriately to changes in rotuine work setting; and be aware of normal hazards and take appropriate precautions. (*Id.*) Dr. Weinstein indicated that Plaintiff had an "extreme loss" of the ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods, i.e., 2 hour segments; and complete a normal workday or workweek without interruptions from psychologically based symptoms. (*Id.*) However, Dr. Weinstein also found that Plaintiff's intellectual functioning was not at all reduced. (Tr. at 434.) Plaintiff was also found to be moderately limited in daily living activities and maintaining social functioning, frequently limited in concentration, persistence or pace, and that she had frequent episodes of deterioration or decompensation in work or work-like setting. (Tr. at 436-37.) Thus, Dr. Weinstein found Plaintiff was "disabled from both a psychiatric perspective as well as physiologically." (Tr. at 438.)

Plaintiff indicated on her daily activity report that she does dishes, makes her bed, dusts, folds laundry, cleans the bathroom, rides in and drives a car, walks, shops by phone, mail, and on the computer, handles her own finances, gets along with authority figures, and does not use any assistive devices to ambulate. (Tr. at 131-33.)

The ALJ posed several hypotheticals to the Vocational Expert ("VE") and included moderate limitations in attention and concentration. (Tr. at 55-58.)

**F.     Analysis and Conclusions**

**1.      Legal Standards**

The ALJ determined in alternative analysis that even if a severe impairment could be shown, during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 72-76.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Turning first to the ALJ's alternative analysis, Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically argues that the ALJ failed to afford proper deference to Plaintiff's treating physicians. (Doc. 9 at 9-12.) Plaintiff also contends that the ALJ ignored medical evidence showing Plaintiff's disability and erroneously concluded that Plaintiff did not suffer from the alleged impairments. (Doc. 9 at 12-14, 16-17.) Finally, Plaintiff asserts that the ALJ improperly discredited her credibility. (Doc. 9 at 14-16.)

### a. Treating physician evidence

11

The opinion of a treating physician is to be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). In the instant case, the ALJ properly rejected the opinion of Drs. Weinstein and Master because neither was supported by any explanation, let alone acceptable diagnostic techniques, and because it was inconsistent with other evidence of record.

Since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," I suggest that Drs. Weinstein and Master's conclusions that Plaintiff was not able to work was properly discounted by the ALJ. *See Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). I further suggest that the ALJ properly discounted Drs. Weinstein and Master's medical opinions and chose not to give them controlling weight because they were not well-supported and were inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). As Defendant notes, neither doctor indicated when they opined that Plaintiff became disabled. (Doc. 14 at 12.)

Dr. Master states that she was Plaintiff's primary physician since 2000 and that she "believe[s] [Plaintiff] is functionally both medically and physically disabled . . . [and] unable to sustain meaningful employment." (Tr. at 430.) There is no medical explanation for this conclusion and there is no objective medical evidence of record from Dr. Master's office to accord any weight. Moreover, this conclusion comes more than two years after the expiration of Plaintiff's insured status. Therefore, the ALJ properly discounted this conclusory ultimate finding. *See Kidd, supra*.

The limitations indicated by Dr. Weinstein are also unsupported by any objective medical evidence, are internally inconsistent, and do not comport with Plaintiff's own description of her abilities and limitations. Dr. Weinstein attributes moderate and marked intellectual limitations to Plaintiff, yet finds that Plaintiff's intellectual functioning is not at all reduced. (Tr. at 434, 435-36.) Although Dr. Weinstein concluded that Plaintiff had a moderate loss in her ability to accept instructions and respond appropriately to criticism from supervisors, Plaintiff herself indicated she never had any issues with authority figures in the workplace and gets along with others. (Tr. at 131, 436.) More importantly, there is no evidence of the impairment, let alone the severity of impairment, that would justify the stated serious limitations in function given by Dr. Weinstein. Finally, Dr. Weinstein's findings come two years and three months after the expiration of Plaintiff's insured status, and make no mention of her condition at or before the time her insured status expired.

The ALJ therefore properly determined not to give controlling weight to Dr. Weinstein's opinion since it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with the other substantial evidence in [the] case record." *Wilson, supra.*

b.  **Medical evidence of impairments**

I further suggest that substantial evidence supports the ALJ's finding that although Plaintiff has a history of complaints of pain, the medical evidence does not reveal any severe impairment. The record is replete with negative or normal test results. (Tr. at 239, 250-52, 253, 262, 265, 272-73). Although there is evidence of "tiny" pulmonary nodules (Tr. at 276, 319) and a "small" hiatal hernia (Tr. at 250, 319), neither of these conditions were shown to impair Plaintiff's functioning . Dr. Morrison noted that "we may not find any pathologic causes for her current symptoms"

"despite the fact that Plaintiff "is quite adamant that there is underlying pathology." (Tr. at 264.) Dr. Osborn also noted that the "etiology" of Plaintiff's alleged pain was "unclear." (Tr. at 241, 247.) Nonetheless, in May 2007, Dr. Osborn diagnosed Plaintiff with "[c]onnective tissue disease, inflammatory." (Tr. at 306, 369.) However, Dr. Osborn noted that Plaintiff "[c]ontinues with mild pains but had dramatic improvement on methotrexate . . . [and is d]oing very well. Minimal morning stiffness. No Joint swelling or pain of significance." (Tr. at 369.) A Psychiatric Review Technique performed in July 2007 found insufficient evidence of affective disorders. (Tr. at 397.) In addition, Plaintiff provided no evidence of mental health care sought or received that would support a claim of mental impairment. Finally, although Dr. Salka diagnosed Plaintiff with "[s]ystemic lupus erythematosus with chronic pericardial effusion and now with a small pericardial effusion" in May 2008, there is no evidence indicating how this condition impairs Plaintiff's ability to function in her daily life, let alone how it may have affected her on the alleged onset date. (Tr. at 420.)

Therefore, I suggest substantial evidence also supports the ALJ's finding that Plaintiff did not suffer from a severe impairment. In the alternative, I suggest substantial evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity to do light work, and that the hypothetical incorporated the attention and concentration limitations suggested by Dr. Weinstein.

### c. Complaints of disabling pain not fully credible

As to the ALJ's findings that Plaintiff's complaints of disabling pain and other symptoms were not fully credible, Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can

reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence and for all the reasons stated above, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding the level of pain was not fully credible. The RFC Assessor found Plaintiff only "partially credible" because there was no medical evidence of swelling of the joints or any description of lack of joint function to account for her claim of disabling joint pain. (Tr. at 416.) The previously-described host of medical tests and absence of medical evidence of impairment seen in the Mayo Clinic records

further undermines Plaintiff's credibility. Furthermore, Plaintiff's complaints of disabling pain are undercut by her own description of her daily activities that she does dishes, makes her bed, dusts, fold laundry, cleans the bathroom, rides in and drives a car, walks, shops by phone, mail, and on the computer, handles her own finances, gets along with authority figures, and does not use any assistive devices to ambulate. (Tr. at 131-33.) I therefore suggest that the ALJ's decision that objective medical evidence does not confirm the severity of the alleged pain rising from the condition is supported by substantial evidence.

### d. Conclusion

For all these reasons, and after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*,

454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                   s/ Charles E Binder
                                                   CHARLES E. BINDER
Dated: May 24, 2010                            United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date:  May 24, 2010        By     s/Patricia T. Morris
                                               Law Clerk to Magistrate Judge Binder